We'll hear first from Mr. Bruno. May it please the court. My name is Thomas Bruno. I represent Mr. Ivan Velius and I request five minutes for rebuttal. Granted. This is a case where plaintiff was successful on, was the prevailing party in four of the five claims that were taken to trial and ultimately decided by the jury. As a result of that, that plaintiff filed a motion for attorney's fees after trial. And the ruling by Judge Arenas determined first that the victory of plaintiff was not de minimis. And then he proceeded to evaluate the attorney fee petition, we believe erroneously. Specifically that once a judge is, a trial judge determines that the victory is not de minimis or merely technical, he's required to use a traditional lodestar analysis. In this opinion, Judge Arenas did not use a traditional lodestar analysis. In fact, he says at page 10 of his opinion that he's not required or doesn't believe he's required to provide a lodestar analysis. Isn't that what the opinion says in Farrar? Farrar says that when there's a nominal damages award, the usual fee will be no fee. Not always, but the usual fee will be no fee. A low fee would be allowed and the court need not go through the many steps involved in determining the lodestar. That's not what the implication is from the concurring opinion of Justice O'Connor, which was reaffirmed by this court in JAMA. Right, but Justice O'Connor's opinion is not the opinion of the court. Justice Thomas's opinion is the opinion of the court. I understand. But in the case which is interpreted for our Morales case, which is cited in my brief, that is one that specifically says that the lodestar is, you know, generally the lodestar, the traditional lodestar is what's supposed to be granted. And when there's a determination, when the prevailing party is not technical success or de minimis, that you should use the traditional lodestar. That's specifically what Morales' case holds. And what's the cite for Morales? Ninety-six, Fed Third, 359. It's a Ninth Circuit case. Well, okay, so now you want us to take a Ninth Circuit case's statement and use that to vitiate what the Supreme Court wrote in Farrar? No. Don't we? Haven't we, the Third Circuit, adopted the O'Connor factors in JAMA? That's exactly right. And so that's what I'm, you know, that's what, once this Court adopted the O'Connor factors, this case gives the Court now the opportunity to explain exactly what it meant in JAMA by adopting the O'Connor factors. And Justice O'Connor specifically by detailing how to determine whether a case is merely technical or de minimis or not, the clear inference is that there's going to be an appropriate award of attorney's fees based upon the lodestar. Do you need to go there? I mean, don't we say in JAMA there was a remand to consider the extent to which the RFRA claim independently justified a fee award? And we even dealt with the hourly rate, you know. Well, I'm not saying this case shouldn't be remanded for the appropriate evaluation and calculation or, you know, using the appropriate standard with appropriate guidance by the Court. Well, yes, you are. I mean, you don't want to keep $25 an hour, do you? Well, I'm asking if, yes, well, that's correct. I don't know how that could be a reasonable rate. Well, that's another argument, yeah. So, but I believe that this Court has to give guidance to what the standard would be applied under these facts, where a case is not a de minimis, where the plaintiff's victory, if you will, was not a de minimis victory, not merely technical. At that point, under 1988, you're required to give a reasonable attorney's fees, and at that point it would be under the, you know, at least the starting point would be a traditional lodestar analysis, and then you would make any appropriate modifications from that point forward. In this particular case, the district judge did not apply the lodestar analysis. As we know from lodestar, it's a reasonable rate, a reasonable attorney's rate and reasonable hours. Here, in some kind of a convoluted and confusing fashion, the judge sua sponte took up his own evaluation of how many hours he should award to counsel, a format or formula not even suggested by the ---- He found himself, he believed himself to be constrained to give either no damages or low damages. Correct. Because of the nominal damage award. Having found, though, that I'm not going to take issue with whether his finding is right or wrong, that this is a significant case and there were public policy implications and it's going to be a wonderful teaching tool for other people. Shouldn't, for every court in the country, shouldn't he then have gone to the lodestar instead of considering whether or not there's low or no fees? That's exactly. The analysis you say in your brief is clear as mud, and there's an element of truth in that, isn't there? I believe so, Judge. I believe that once you make that demarcation, once you decide that it's not de minimis, that it's not merely technical, then you have to use the lodestar analysis. That's the whole point behind Justice O'Connor's ---- He said, if not explicitly sub silentio, in JAMA, when we remanded. That's exactly right, Judge. JAMA was different on the facts, though, right? Because, I mean, this, what I'm wrestling with is, should we treat cases like this one, which is a straight civil rights case, differently, categorically differently, than cases that are further complicated by the fact of a tort claim or some ancillary claim, other than a civil rights claim, where there is a verdict, as there was in JAMA? Yeah, well, I don't know how far this court wants to go. I just know that in a civil rights case, I believe that you would be required, at least to enunciate, that that would be what the format should be, that you should use the lodestar in a civil rights case. But Farrar doesn't, Farrar says just the opposite. And Judge Rendell's opinion in JAMA, she took pains to note that Justice O'Connor joined the majority opinion in Farrar. Her opinion is not the law of the land. And Judge Rendell's opinion in JAMA thought Justice O'Connor's concurrence was helpful, in light of the fact that there was this $100,000 damages award on the non-civil rights claim. But we don't have any of that here. This is a straight civil rights case. Why doesn't this fit neatly under the Farrar rubric, whereas JAMA provides other considerations that seem to distinguish it factually from Farrar in this case? Well, there, if it's de minimis, then you do use the no low fee approach. It's a question of where you draw the line. No low is one standard, meaning for de minimis or mere technical victory. But if it's not de minimis or not a mere technical victory, then you use another standard, which is the traditional lodestar standard. Farrar dealt with a very de minimis case. That was certainly the consensus of everybody. But we resolved in JAMA an issue that the majority opinion in Farrar didn't have to reach, because JAMA involved a case of significance. What did Judge Rendell say? The impact on the victim may be difficult to express in monetary terms, but the significance of the right vindicated and the purpose served by the litigation cannot be overlooked, and particularly in the prison setting should not be diminished. So that's not a Farrar case. Farrar was a de minimis case. JAMA was a very serious case. Well, it was not de minimis. This case, the trial judge determined it was not de minimis. Same thing. Same thing. Similar vein. There was a dollar, though, in the civil rights case. It was four. I mean, should we really say there's a difference between a dollar when the plaintiff gets a dollar and they're asking for $17 million, the plaintiff gets a dollar when they're asking for $10 million, the plaintiff gets a dollar when they're asking for $100,000? I mean, it's a nominal damages award. It's de minimis in every one of those cases. Nominal damages does not mean, does not translate into de minimis or merely technical. As I mentioned at the outset, we were successful. We were, you know, in four out of the five claims we made, two excessive force claims against these officers and two bystander liabilities against these officers. And the only claim that we lost was a bystander liability against one of the officers. And this is a vindication of your constitutional rights. Well, so was Farrar. Okay, well, it's up to the trial judge to determine whether, in fact, he believes it would be de minimis or not de minimis. And once he does that. And his award of $2,000 and change speaks volumes to that. That tells us what he thought about it. No, I think that he felt constrained by Farrar that he had to use no or low. When the fact of the matter is, he does not. Once he determines that it's not de minimis, he's not constrained by a no low fee. He uses the load star and then he makes the appropriate reductions or modifications based upon the adversarial system, what the defense would argue,  And he can consider and indeed must consider the nominal award. Absolutely. He can make adjustments after he does the load star. It's a question of when do you make that adjustment. Farrar doesn't make him do the load star. I can't find anything in Farrar, the opinion of the court, that requires him to calculate the load star. And, in fact, the language of Farrar, which I could quote, if I had to, says that you don't have to calculate the load star. So Farrar was a de minimis case, period. Correct. There was no reason for the majority to go that far because they said it's de minimis. They didn't say, and by the way, if it's not de minimis, you're going to get what. But even the implication there would be that maybe there's something else where you get. It doesn't say in all cases. It says in de minimis cases you get a no or low fee. Your argument is that this district judge felt constrained to give you $25 an hour instead of $400 an hour? Where does that come from? I felt, no, he was constrained not to use a traditional load star. I mean, I read it the other way, quite frankly. It looks to me like he felt for some reason, perhaps jama, that he had to do the load star, but he really didn't want to because, speaking only for myself, giving you $25 an hour strikes me as rather outlandish. It strikes me as designed to reach the result, i.e., I'm going to give this gentleman a very low fee because the award was nominal slash, nominal or technical. Is there any other way to explain? But that conflicts with his decision that it wasn't technical and it wasn't de minimis. You're right. The first part of his decision is such that he says it's not technical and it's not de minimis. Had he said that, I wouldn't be here. We wouldn't be here. You want us to establish a bright line rule that whenever a district court judge finds that a verdict, regardless of amount, is de minimis, is not de minimis, that the load star must be applied. Well, he has to use, that he has to use a traditional load star. Yes, that's correct. Now, your opponent argues that even though it may be a little, it may have not been in the mind of the district court judge, that he did apply the load star and used it at the $25 rate. Is that, you know, is he putting the cart before the horse or the horse before the cart? Well, absolutely, because he specifically says that the court need not, in his last page of his opinion, the court need not engage in lengthy analysis of determining a reasonably hourly rate. So he says, I'm not going to have to engage in a load star rate, meaning a reasonably hourly rate. So he says he's not going to do it. He found himself constrained by the majority opinion in Farrar, even though there were no findings in Farrar of significance or public purpose. Exactly right. And what is the significance of public purpose here? Because I have no idea whether the jury found in your favor because the handcuffs were too tight or because they threw your client to the ground or some combination of both. Or because of the one hour that he was in custody or the fact that there were two officers who accessed the force and the same two officers had bystander liability. But the point is that I don't think you have to get that far. But you don't have to get that far because that's not the issue here since it's only our appeal. And the issue that we're raising on our appeal is once a district court judge says it's not the minimus, that what's the standard that he should be using in determining the attorney's fees under 1988? You shouldn't revisit. You don't have any jurisdiction, I believe, to revisit whether, in fact, it was or wasn't the minimus. Because the only issue on this appeal is the standard that the judge uses. Part B, we didn't appeal from Part A of his opinion, which is the determination that it was not the minimus. We only appealed for the only issues from Part B, which is how he made his evaluation. And that's the only issue before this court. Okay. We'll hear you on rebuttal. Thank you. Mr. Barker. Thank you, Your Honor. Good morning, Your Honors. My name is Michael Barker. I represent all the defendants in this case, but on appeal, we have Francis Smyth and Kevin Zappilli, my clients. Excuse me. The Farrar decision we submit fits like gloves on a finger to this case. This is purely a nominal damages case. Velias was a plaintiff in the Section 1983 action. He sought compensatory damages. That's all that he sought, and punitive damages. He got nothing. And that would be the majority opinion under Farrar telling us, in those circumstances, the usual fee is no fee. There are cases, exceptions, that could apply. And Judge Irenas in this case, I think, got it wrong, frankly. When we look at what his opinion says compared to what the jury verdict says, he should have never, never said this is not a de minimis case. The jury verdict tells us only that, answer question number one, the defendants intentionally committed some act under color of state law that violated plaintiff Ivan Velias' Fourth Amendment right not to be subjected to excessive force. Says no more. It doesn't say how the misconduct occurred. We don't know if this will educate people about the evils of tight handcuffing, of throwing people, et cetera. It's unknown. So what's the teaching moment here? There isn't one. Other than the fact that Mr. Velias' rights were deprived. He was deprived of his rights on that day. We know that much from the jury. Just like in Farrar, this litigant has the satisfaction of knowing that a federal court concluded that his rights had been violated in some unspecified way, and that's all he knows. Now, what's important for this court is when we look at what Judge Irenas did, he says, well, it's not a de minimis case. Well, why? Why is that? Well, he goes on about how the, in his opinion, the handcuffing occurred, and that's what advanced the law, and that's a guiding principle for us, and that tells us something for public policy. You know, the interesting thing, Mr. Barker, is you say at 17 of your brief that plaintiff is overly concerned with the semantics of the district court's decision. I assume you mean the semantics to mean that part of the decision that finds a significant legal issue in this case that serves an important public purpose with exemplary value that will guide the officer's conduct in the future. But you don't mention any of this in your brief. Oh, we do. In our appellate brief, I think at page 40, we talk about it. At page 40. I think. At page 40. Okay. Am I correct on that? Our appellate brief, we discuss the legal significance of public purpose on page 40. 40. Page 40. 40. Well, then maybe I just didn't get that far. Well. But isn't that what this case is all about here? Well, I think what it's all about is if you have a nominal damages case where the plaintiff had been seeking compensatory damages, you don't get an attorney fee unless you can show that you fall into one of the exceptions. The exceptions, we get guiding principles from Justice O'Connor, and she tells us about three factors. And from JAMA. And from JAMA. And two of those factors, the second and the third, one, extent the legal issue involved for the number two, and the public policy for number three. And the opinion of Judge Irenas, which deals with those two issues rather collectively together, is based on, well, the case is instructive about handcuffing, and that advances the law, and that tells us something for public policy. But the jury verdict never says that's the reason for this constitutional violation occurred. You know, Judge Rendell in JAMA spoke about the district judge who was Judge Debevoise in that case, his intimate familiarity with the evidence in the case. Right? Yes, Your Honor. I was there, too, with Mr. Bruno. Mr. Bruno had three themes in his case. You took him out of the truck. Well, Mr. Velias says, look, I'm minding my own business, I'm sitting in the truck, and without any word or warning, you come up, you take me out, you slam me to the ground, you hurt my chest, you hurt my arms, I get scratches. Then you put on the handcuffs, and the handcuffs are applied too tight. And then the third part, the handcuffs are left on when I'm complaining about it, and you shouldn't have done that. Three different theories of liability. Also, failure to intervene. The bystander, which I never did understand because the one guy who was a bystander, they found him not liable, and the two guys who were doing it were found liable for failing to intervene in their own conduct. I mean, that's beyond me. Judge Barry, may I address that? That would tend to indicate that the basis for the jury verdict was the takedown because the one person that wasn't there for the takedown and not liable for bystander liability is Officer Jacoby. We have Judge Irena's findings. I mean, we can speculate what's important and what's not, but he made whatever findings, whether they're wrong, right, inadequate, more than sufficient, I don't know. But that's why we're here, Your Honor, because he's wrong. But doesn't the law give the trial judge the right to make the de minimis finding? Not mistakenly. The cases don't give that right to the jury. They give it to the judge, the judge who has the evidence, the arguments of the lawyers in the case. He has to make a decision, he or she has to make a decision after the verdict whether the de minimis standard is met. He can't do it mistakenly, Your Honor. The district court's degree of success argument, Judge Irena, his degree of success argument, but I'm quoting from Petrunich, the district court's degree of success argument was based on an impermissible reconstruction of the jury verdict. So this court, we argue, just as the court there, should vacate the resulting order awarding attorneys. Let's assume that the three issues were argued to the jury and the jury came back with their verdict and Judge Irena found that one of the reasons was not de minimis, that one of the reasons was that the officers violated the person's Fourth Amendment right to be free from excessive force, even in the absence of physical injury. And I'm reading from the opinion now. He found that that meant the standard that took the case out of the de minimis category. But it doesn't, Your Honor, because in order to come out of the de minimis category on significant legal issue, you have to advance the law. You can't have a general proposition that excessive use of forces is contrary to our civil rights, and that's the significant legal issue. Sotomayor, should we send this back and let him explain what he meant by the significant issue and what public policy would be advanced? He can't. He's not the fact finder. For this court to find that this case advances the law or tells us something for public policy, the jury verdict would have to do that. And the jury verdict couldn't do that. It would mean that every Fourth Amendment violation is not a de minimis case. That's what the jury verdict tells us, right? If we were to uphold what he held. I think I lost your train of thought. I think I put a few double negatives there. Sorry. Maybe that's why I lost you. What I'm positing is the jury verdict is a garden variety verdict. It's not a special verdict that breaks down the cognizable claims, any one of which could have risen to the level of Fourth Amendment violation, correct? And any one of which, if it had been properly set up with special interrogatories, might have given us guiding light and advanced the law. But that never happened. All we know is there's a generic Fourth Amendment violation. That's all we know. And if that's not de minimis, then every Fourth Amendment violation is not de minimis. Right. But why shouldn't, to Judge Barry's point, why shouldn't we send this back? Because it appears that the trial judge is, in balancing and trying to make this difficult decision, we're getting very mixed signals from the trial court. Are we not? We're getting the signal that this is not de minimis. Gee, this is important. And then, my goodness, you must have rejoiced when you saw the fee award, right? $2,200 or $2,500. I can't imagine Mr. Bruno was very happy about that. So why not just send it back with a clarifying statement that Farrar says this. It's the law of the land. You're not bound by Justice O'Connor's concurrence. Do it over again. Because we can't really know what the judge was thinking here regarding should it be no fee, should it be low fee. Well, our point is you send it back, you are bound by the Farrar decision, which is no fee. No, Farrar doesn't say that. Farrar says usually no fee. Usually. Right. And Farrar was not a case where there was a significant legal issue, public policy finding. Nor is this. Well, there's a finding here. No, but not by the verdict and not by the jury. And the judge, in order to get to that point, misconstrued or basically he had made an assumption of what the jury based its verdict on. We could say that in a remand order. We could say there are many things we could say in a remand order that would be helpful to your side and detrimental to your side, and the same could be said for Mr. Bruno's side. Why not, I'm asking you, I'm going to ask Mr. Bruno in rebuttal, why shouldn't we just clear the air? Because what I would submit to you, what this appellate court is faced with is a large cloud. And we're not a court of first impression. We don't make these decisions on the ground. In fact, I was struck in reviewing the case law that the only current theme that I can find in the case law is the courts of appeals deferring to the trial judge's exercise of discretion in what the fee should be, whether it's a no-fee case, a low-fee case, a medium-fee case, or a high-fee case. I've seen awards of $300,000 in fees upheld, $200,000 in fees, and as we know in Farrar, there was no fee, and that was upheld. That's the constant theme running through this. So why shouldn't we send it back to Judge Arenas with some guidance so that he can exercise his discretion, and why not? Well, because we know certain facts. We know they sought compensatory damages. We know that there were only nominal damages awarded. We know that you have to have three criteria for the judge to see it as an exceptional case. And we know the first one is the degree of success. And in this case, we know that we have the $1 nominal damages versus $150,000. We know that the plaintiff really didn't establish liability in this case because the plaintiff could only prove the violation of a nonspecified right and didn't prove causation or damages, none. Plaintiff won in a case that the district judge described as significant. How can you say he didn't prove liability? Because under Section 1983, to prove liability, you have to show that the constitutional deprivation caused the damages, and in this case, that didn't happen. The jury so found. Well, then how could the $1 be appropriate? Well, the $1 is appropriate if you have a constitutional violation and you have no damages. Yes, you have liability, but not damages. Right. Under Farrar, he's the prevailing party. I don't question that. And he proved liability, but he didn't prove damages, which is why he got a buck. We don't question the fact that he's the prevailing party. And we don't question the fact that this verdict is only what it is. That is, there's a finding that there's a violation of some unspecified constitutional right. So we also know so you don't want it to go back. You want us to just say that you want us to order the entry of a no fee because Farrar tells us that in a case of nominal damages, the usual fee is no fee. That's your argument? Yes. And I want to say this, Your Honors. On the second element, we talked about that. We referred to it about the significance of the legal issue and why you can't make that what the jury did. They answered the questions that were put to them, their standard Third Circuit Court of Appeals model jury charge and interrogatories. That's as far as it went here. And as for the third and last part of the test for O'Connor factors about a public purpose, a case accomplishes a public purpose as opposed to simply vindicating the plaintiff's individual rights when it vindicates the rights of others, creates new precedent, deters future deprivations, provokes a change in the defendant's behavior. We can't, if I may just finish, Your Honors. We can't make any, we can't see any of that here because of the insufficiency of the findings on the verdict by the jury. But Judge Irenas didn't make a finding on the public purpose aspect of what Justice O'Connor wrote. He made a finding on the significant legal principle aspect of her finding. And if memory serves me, Judge Irenas says I'm treating them together, that the significance of the legal issue and the public purpose, and he thought it was all related to the handcuffing. And we're submitting, Mr. Bruno doesn't know. I don't know. Judge Irenas doesn't know. We can't help. Why didn't you move then, why didn't you move before the jury went out to have the verdict sheet made clearer so you'd understand what the verdict would say when it came in? Certainly if Mr. Bruno had made the argument that he wanted special interrogatory You're the one who's complaining about it. Why didn't you make that argument? Well, as it stands now, it's to my advantage that I didn't. Right. All right. We understand your argument. Thank you, Mr. Barker. Thank you, Your Honors. Mr. Bruno, rebuttal. Would you begin with my question that I asked opposing counsel? Could you just repeat? First, I guess, do you accept my premise that what we have here is cloudy? Yes. All right. Then why not send it? Why not is it the obligation of this court to try to clear the air and send it back for the able trial judge to exercise his discretion, consistent with whatever clarification we see fit to give him on the law? Well, I think that I agree with that. I think that the clarification should be that with regard to once he makes his determination, which should not be disturbed by this panel, and in fact counsel hasn't given you any reasons as to why it should be disturbed. Well, if it's a misapprehension of the law, then he will. No, no, I'm talking about whether it's diminished or not diminished. You want us to send it back having fixed in stone the conclusion that this is not de minimis? Sure, because the other issue is not before the court. That's part and parcel of the fee award, though. I mean, what we're adjudicating here with her argument is on the propriety of the fee, and if we're going to clear the air regarding the fee, there's a chance that the judge, in the light of new guidance, would look at a lot of things differently. Couldn't he do that? No, Judge, that wasn't our we didn't appeal. We didn't appeal from that. They had attempted to file, I think, and there's nothing in there, a brief that, you know, in this case or, you know, in our appeal, they had filed something which they tried to bootstrap that argument on their original appeal, but they never filed an amended notice of appeal, and they never filed a separate appeal from this particular judgment of our attorney's fees that was entered. And so as a result, that was all waived. That issue would be waived. And that issue is not before you have no jurisdiction on that particular issue. Well, Rule 4A4B1 says, if a party files a notice of appeal after the court announces or enters a judgment but before it disposes of any motion, the notice becomes effective to appeal a judgment or order in whole or in part when the order disposing of the last such remaining motion is entered. I mean, doesn't that show you're wrong on that? Well, I think that there's an Eleventh Circuit case which talks about appellate procedure 3C1B where a notice of appeal has to designate the judgment, order, or part of the award that's appealed from, and it has to be an existing judgment or order at the time. Well, attorney's fees under Rule 54 are listed in the list contained in 4A4A. But anyway, we'll start with that. Aside from that, a couple of things. One is that in terms of Mr. Barker suggested that Judge Irenas had to go to the jury to ask the jury whether in fact this award was a, quote, significant legal issue. I submit to you that's a role for the trial judge. And in this case, Judge Irenas determined that it was not the minimus. So that would be the judge's role, the trial judge's role, not the jury's role to determine whether in fact it was a significant legal issue. But let me ask you this question. Yes. The law is officers can't use excessive force. Judge Irenas is saying the legal principle established here is officers can't use excessive force under the Fourth Amendment. Doesn't it leave us a bit wondering, you know, why a statement of the law and the jury verdict satisfies the standard of a significant legal principle? Does a verdict satisfy a significant legal principle by making a finding of what the law is? First of all, I don't think that you can reconsider what his reason. I think he has discretion there, and I don't think he abuses discretion making that finding, and I don't know that you should upset that particular finding itself. But be that as it may, I know what he says here. He goes further than that. He says that the case involved handcuffing of an arrestee, an action that law enforcement officers repeat on a daily basis throughout the country, and that the jury found that they could use excessive force in handcuffing even if there is no physical injury, and that based upon the facts, as the jury determined there because of probably, you know, the length of time, over an hour, hands behind your back, complaining, being crumpled into the back of a police car. We have no idea. For all we know, that jury sat in a room, and the first two minutes they said, we're not concerned about the handcuffs being too tight, but, boy, that seemed pretty harsh that they threw him to the ground. Or the argument might have been, how many jurors did you have? I submit to you. How many jurors did you have? Eight. Okay. Or nine. Eight or nine. Or maybe the debate went something like this. Seven thought no liability. One insisted on liability, and they compromised and said, well, we'll go for liability if we give the guy back. My point is we have no idea in the world what that jury was talking about. So to tell us that it was a handcuffing is a fallacy. Well, that's one reason why you have to defer to the trial judge. He heard the testimony. How could the trial judge correctly conclude it was because of the handcuffing? He knows no better than any of us in this courtroom. If I may, this was not a garden variety excessive force bystander liability case. This had two discrete excessive forces put into the ground and the handcuffs, two discrete bystander liabilities. The interpretation, the only logical interpretation is taken to the ground, one officer committed excessive force, the other one stood by, bystander liability. Handcuffing, the second officer put the handcuffs on, the first officer stood by. That's the only way you can get two officers to have two excessive forces and two bystander liabilities when you have two discrete acts that were played in the complaint and proven at trial is so that you have more than just, you know. So we can infer it had to be both then? It had to have been. That's the only way you can get that verdict. I believe that the trial judge also understood that clearly because, you know, he was there. Just the whole way the case went down, there were two discrete acts of excessive force. Does that make it an unusual case? I think so, especially when you consider the bystander liability aspect of it. For the one hour, because there's an issue in the law about handcuffing, which is used every day, how much is excessive force? Well, once it goes to the jury and the jury determined this case, even without injury, there's excessive force, that is a principle that this judge says, hey, that's an important principle that police officers should know. You can't use handcuffs in this way or for this length of time, and a second officer just can't stand by and allow that to happen. And that's an important statement that should go forth, and that's why I believe he determined that this is not a de minimis case, but, you know, that there are other factors involved here that make this more important than just, quote, the garden variety, $1 excessive force by rights. I mean, maybe we should have gotten $4, one for each discrete violation of the Fourth Amendment. But, you know, but nonetheless, I think that that's what makes this a little bit different. And the judge heard the testimony and heard the credibility of the witnesses, and I think it's clear from this experienced panel that you don't get a decision like this that is found in favor of plaintiff against the police officers. And, you know, with regard to damages, well, okay, fine, maybe they felt the fact that he had been a sign painter led to the radial problems that he had in his wrist, and maybe that were true. Maybe they felt it wasn't any worse than what he had going into this case. But in his mind, it was. Okay, but nonetheless, there were these four discrete Fourth Amendment violations. All right. Thank you. Thank you. One last question. When you have a general verdict, don't we have to assume that all theories argued to the jury, presented to the jury, were found by the jury? In other words, when you read the verdict slip, it's a general verdict. It's not a very specific fact. Well, except here it was broken down into do you find this officer, you know, well, first of all, it was agreed to by counsel, you know, what the verdict sheet was. I mean, he had as much input into it as anybody else. But it did ask about did you find Officer Zappilli commit excessive force, yes or no? Did you see Officer Smythe excessive force, yes or no? Did you submit Officer Zappilli bystander liability, yes or no? Officer Smythe bystander liability, yes or no? And then Jacoby bystander liability, yes or no? So there weren't specific questions that were answered. You know, it wasn't just let us know if there was excessive force or let us know if there was bystander liability. Each of the particular officers, there was a checkmark for each of the officers. And for two of the officers, both questions were answered in a positive. All right. Thank you, Mr. Bruno. We understand your argument. The case was well argued. We'll take it under advisement. Please rise. The score stands adjourned until Monday, December 12th at 10 a.m.